UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ROJELIO D. LARA,

    Plaintiff,

v.                                                      CASE NO. 08-CV-13455

COMMISSIONER OF                          DISTRICT JUDGE DENISE PAGE HOOD
SOCIAL SECURITY,                            MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]


**I.     RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at:  http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf.  This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II.     REPORT

### A.     Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for disability benefits. The case is presently before the Court on cross-motions for summary judgment. (Doc. 9, 14.)

Plaintiff was 50 years of age at the time of the most recent administrative hearing and has completed a high school education. (Transcript, Doc. 6 at 18, 403.) Plaintiff's relevant work history includes 27 years as an assembler in an auto manufacturing plant. (Tr. at 55.)

Plaintiff filed the instant claim on June 30, 2005, alleging that he became unable to work on November 4, 2004. (Tr. at 45-49.) The claim was denied at the initial administrative stages. (Tr. at 34.) In denying Plaintiff's claim, the Defendant Commissioner considered osteoarthritis as a possible basis of disability. (*Id.*)

On January 14, 2008, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Regina Sobrino, who considered the case *de novo*. In a decision dated February 20, 2008, the ALJ found that Plaintiff was not disabled. (Tr. at 11-20.) Plaintiff requested a review of this decision on February 29, 2008. (Tr. at 7-9.)

The ALJ's decision became the final decision of the Commissioner when, on June 9, 2008 (Tr. at 2-4), the Appeals Council denied Plaintiff's request for review. On August 8, 2008, Plaintiff filed suit seeking judicial review of the Commissioner's unfavorable decision. (Doc. 1.)

### B.     Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for

exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting S.S.R. 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the

reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

**C.     Governing Law**

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II, 42 U.S.C. §§ 401 *et seq.*, and the Supplemental Security Income Program ("SSI") of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. BLOCH, FEDERAL DISABILITY LAW AND PRACTICE § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920.  *See also Heston,* 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540).  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors."  *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

    **D.**    **Administrative Record**

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that an MRI of Plaintiff's right shoulder taken in August 2002 revealed findings consistent with partial tearing of the rotator cuff muscles. (Tr. at 199.)

In April 2003, Plaintiff was examined for problems with his nose. The doctor noted that Plaintiff had a "history of prior nasal trauma with boxing in high school." (Tr. at 333.) Plaintiff underwent surgical repair of his nose in late June 2003. (Tr. at 334.)

In November 2004, Kevin Snyder, D.O., stated that Plaintiff should be restricted from using torque guns and repetitive gripping tasks. The doctor also felt that Plaintiff should be restricted from doing overhead lifting and pulling. (Tr. at 225.) X-rays of Plaintiff's heart taken in late December 2004 showed the size of his heart to be normal and no evidence of acute cardiopulmonary disease was seen. (Tr. at 217.)

In late January 2005, Plaintiff underwent an endoscopic examination of the colon which was normal. (Tr. at 349.)

On June 1, 2005, Plaintiff underwent carpal tunnel release surgery to his right wrist performed by Justin Miller, D.O. (Tr. at 144.) Three weeks later, Plaintiff was seen for a recheck by Dr. Snyder. (Tr. at 210.) Plaintiff reported some soreness at the site of the surgery. (*Id.*) Plaintiff also reported continuing problems with his right shoulder. The doctor noted that "his work agreed that his carpal tunnel syndrome is work related, but said that the shoulder was not because apparently somebody saw him working out at work, running and lifting weights." (*Id.*) The doctor reported pain during range of motion testing, but stated there was no weakness in the shoulder. (*Id.*) Similar findings were made in late July 2005, and the doctor felt that Plaintiff's rotator cuff injury was "not severe enough to require surgery[.]" (Tr. at 207.) As to Plaintiff's

wrist, the doctor reported that there was no atrophy and that his grip strength appeared to be normal. (*Id.*)

On July 26, 2005, John Martin, D.O., reported that although Plaintiff described pain in the area of his carpal tunnel release surgery, previous numbness was "resolving nicely and there is no significant swelling, redness or drainage." (Tr. at 253.) With regard to Plaintiff's shoulder, the doctor suggested that, "given his worsening symptoms and his failure to date, I would recommend arthroscopy[.]" (*Id.*)

In late August 2005, Plaintiff was seen for complaints that he was "having trouble with swelling of his left ankle when he tries to run off and on." (Tr. at 203.) An x-ray of the left ankle taken the same day indicated some "minimal" swelling in the vicinity of the left ankle joint but otherwise, the left ankle was "normal." (Tr. at 204.)

Eight days later, Plaintiff underwent the arthroscopic examination and repair of his right rotator cuff, performed by Dr. Martin. (Tr. at 249.) In late November 2005, Dr. Martin reported that subsequent to the right shoulder surgery, Plaintiff "has made significant progress with mobility and therapy." (Tr. at 246.) The doctor stated that Plaintiff's strength was improving, as was his mobility. The doctor felt that "his long-term prognosis [was] good." (*Id.*)

Eleven days prior to the administrative hearing, Plaintiff was seen by Dr. Snyder. The doctor reported that "physical examination reveals range of motion appears full. He has good strength with testing of the rotator cuff. Slightly positive impingement sign." (Tr. at 382.) Neurological testing of the right wrist was positive. The doctor diagnosed chronic carpal tunnel syndrome and chronic rotator cuff tendinitis. (*Id.*) The doctor felt that Plaintiff was disabled from his prior work and was unable to undertake overhead lifting or repetitive movements. (*Id.*) On

8

the same day, Dr. Snyder completed a Medical Source Statement in which he stated Plaintiff could lift and carry less than 10 pounds, stand and walk or sit for about six hours at a time. (Tr. at 88.)

At the administrative hearing, Plaintiff testified with regard to his ability to lift, "I haven't lifted weights in a little while . . . probably anywhere from 25 to 50 pounds, I would say." (Tr. at 407.) Plaintiff stated that he had "not too much [trouble] anymore" lifting overhead, but stated that he experienced numbness in his shoulder during the wintertime. (*Id.*) Plaintiff testified that he performed yard work, went shopping for personal items, went running up to 5 miles twice a week, and volunteered as a boxing coach. (Tr. at 409-11, 413.)

At the administrative hearing, a Vocational Expert ("VE") also testified. In response to a hypothetical question presuming the ability to lift no more than 5 pounds frequently and no more than 20 pounds occasionally by a person who should be restricted from pulling or pushing more than 10 pounds and who could stand or walk for six hours a day and sit up to eight hours a day, undertaking activities which did not require climbing healing or crawling and which should not involve frequent handling or grasping, the VE identified 2,000 information clerk jobs, 1,000 greeter jobs, 1,500 host-type jobs and 1,200 office clerk positions consistent with these hypothetical conditions. (Tr. at 415-16.)

### E.     ALJ Findings

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since November 9, 2004. (Tr. at 60.) At step two, the ALJ found that Plaintiff's degenerative joint disease and carpal tunnel syndrome were "severe" within the meaning of the second sequential step. (Tr. at 16-17.) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (*Id.*) At step four, the ALJ found that Plaintiff could

9

not perform his previous work as an automobile production assembler. (Tr. at 18.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available in the national economy. (Tr. at 19.)

### F. Analysis and Conclusions

#### 1. Legal Standards

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 19.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in the application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

#### 2. Substantial Evidence

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Plaintiff counsel's primary assertion is that the ALJ impermissibly discounted the Medical Source Statement made by Dr. Snyder shortly before the administrative hearing. In weighing the opinions and medical evidence, the ALJ must consider relevant factors such as the length, nature and extent of the treating relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's evidentiary support, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6). Therefore, a medical opinion of an examining source is entitled to more weight than a non-examining source and a treating physician's opinion is entitled to more weight than a consultative physician who only examined the claimant one time. 20 C.F.R. § 404.1527(d)(1)-(2). *See also Rogers*, 486 F.3d at 242 (stating that the "treating physician rule," which provides that "greater deference is usually given to the opinions of treating physicians than to those of non-treating physicians," is a key governing standard in social security cases).

"Claimants are entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Therefore, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's opinion and the reasons for that weight." S.S.R. 96-2p, 1996 WL 374188, at *5 (1996). *See also Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

The opinion of a treating physician should be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2). A physician qualifies as a treating source if the claimant sees the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition." 20 C.F.R. § 404.1502. "The opinion of a non-examining physician, on the other hand, 'is entitled to little weight if it is contrary to the opinion of the claimant's treating physician.'" *Adams v. Massanari*, 55 Fed App'x 279, 284 (6th Cir. 2003) (quoting *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987)).

In the instant case, the ALJ did not give Dr. Snyder's opinion controlling or even significant weight because it was not supported by the medical evidence of record. In addition, the ALJ found that Dr. Snyder's opinion was inconsistent with other medical evidence of record, as well as Plaintiff's own testimony administrative hearing. I suggest that the ALJ properly gave specific reasons for the weight given the medical opinions and that substantial evidence supports the ALJ's determination that Dr. Snyder's opinion was not supported by objective medical evidence and was inconsistent with the other substantial evidence in the record, in particular, Plaintiff's own testimony at the administrative hearing. (Tr. at 18.)

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions (Tr. at 415-16) that accurately portrayed Plaintiff's individual physical impairments in harmony with the objective record medical evidence as presented by the treating and examining physicians, as well as the daily activities described by Plaintiff himself. (Tr. at 407, 409-11, 413.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x

425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is well within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

**III.   REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

 s/ Charles E Binder  
CHARLES E. BINDER  
United States Magistrate Judge

Dated: April 13, 2009

**CERTIFICATION**

    I hereby certify that this Report and Recommendation was electronically filed this date, electronically served upon counsel of record via the Court's ECF System and served on District Judge Hood in the traditional manner.


Date:  April 13, 2009                        By    s/Patricia T. Morris
                                                               Law Clerk to Magistrate Judge Binder